### W. M. Morris v. The State.

No. 3451.　Decided December 19, 1906.

**1.—Manslaughter—Evidence—Animus—Declarations by Defendant.**

Where upon appeal from a conviction of manslaughter it appeared from the record that a State's witness had been permitted to testify about a difficulty which occurred three weeks before the homicide, in which the son of the defendant beat up deceased, and that during the progress of the fight defendant had made declarations to his son as to how to fight the deceased, etc., and why he didn't give him enough while he had him down, there was no error. Such testimony was admissible to show animus.

**2.—Same—Charge of Court—Defense of Another—Serious Bodily Injury.**

Where upon trial for murder the evidence showed that defendant's son had had an altercation about a month previous to the homicide with the deceased, in which the latter was severely beaten; and that at the time of the homicide the deceased and his brother met defendant and his son and that deceased struck defendant's son in the face, whereupon the two immediately clinched, wrestled and

fell to the ground, and that deceased got on top of defendant's son and hit him on the head and face with what appeared a brass knuck; and that thereupon defendant interfered and an altercation ensued between deceased's brother and defendant, the latter using his pistol, and that then the defendant fired two shots upon deceased while the latter was in a stooping position over the body of defendant's son who was still on the ground, the court correctly charged on manslaughter, and the right of defendant to defend his son; and a criticism that such a charge ignored the question of serious bodily injury was not correct.

**3.—Same—Abandonment of Difficulty—Charge of Court.**

Where upon trial for murder the evidence showed that defendant's son and the deceased engaged in a personal difficulty, and at the time defendant shot at the brother of deceased, the deceased arose from the prostrate form of defendant's son, and standing in a half stooped position defendant shot him; that then the deceased raised up entirely and defendant shot him again; there was no abandonment of the difficulty by deceased, and the issue was not raised by the evidence.

Appeal from the District Court of Harrison. Tried below before the Hon. R. B. Levy.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*S. P. Jones,* for appellant.—Abandonment of the difficulty: McMahon v. State, 81 S. W. Rep., 296; Beard v. State, 81 S. W. Rep., 33; Burris v. State, 34 Texas Crim. Rep., 387.

*J. E. Yantis,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Appellant was convicted of manslaughter, and his punishment assessed at five years confinement in the penitentiary.

Appellant was a farmer and resided near the village of Harleton, Harrison County, and his son, Odell Morris, 22 years old, resided with him. Deceased, Carson Baker, resided with his parents in the same neighborhood, and was about 21 years old. About April 1, 1905, deceased made some derogatory remarks about Odell Morris. Morris afterwards met deceased, during the month of April, and accosted him about the remarks, and they had a fight, in which Odell Morris bested deceased, beating him up badly. Both Odell Morris and deceased quit the fight of their own accord, without being separated. Odell Morris weighed about twenty pounds more than deceased. A neighbor of deceased and Odell Morris tried to make peace between them by telling deceased that Odell Morris was satisfied with the fight, and they should drop it, and urged deceased to agree to allow the matter to drop. Deceased declined to do so. Appellant was present at the difficulty above mentioned, but took no part in it. On May 5th, appellant and his son, Odell, on their way to Harleton, met deceased in the road and spoke to him, and continued their journey, and deceased continued his journey home. A short time after appellant and Odell reached Harleton, Carson Baker (deceased) and his brother Will Baker (who was plowing in his field when the Morrises passed going to Harleton) came to Harleton, went into the store where W. M. Morris was transact-

ing some business, and had some friendly conversations, etc., and came to the front of the store with W. M. Morris. Defendant, deceased and Will Baker were standing on the gallery in front of the store of Dreyfus & Little, when Odell Morris approached the gallery of the store from the street. The testimony as to the manner that Odell Morris approached the gallery is conflicting—several witnesses stating that he rudely rushed in front of deceased; others stating that he walked up and stopped at the edge of the gallery, some four or five feet from deceased. All agree that he did nothing to indicate that he intended to strike or injure deceased; and that deceased struck him on the side of the head or face, and the two immediately clinched, wrestled and fell to the ground, and that deceased got on top of Odell Morris— Odell being on the ground with his face up, and deceased astride of him with one knee on either side, holding him with his left hand and beating him in the face and head with his right hand. All witnesses agree that deceased had a handkerchief over or in his hand while he was beating Odell Morris, and some of the witnesses testified that they saw a cast or brass knuck on deceased's hand, under the handkerchief. When Odell Morris was on the ground and deceased was beating him in the head and face, the blood was flowing from his face, and Odell Morris cried out twice for them to ."take him off"; that he was "beating him to death with knucks." There is a conflict as to just what was done at this time, one witness claimed that J. H. Little started toward them, and that defendant started toward deceased and Odell; and that Will Baker, who had taken a position near Odell and deceased, thrust his hand into his pocket or bosom and motioned defendant back: some witnesses stating that he caught his pistol and tried to draw it, and others state that they did not see the pistol. Defendant staggered back and picking up a pistol that had been dropped on the ground, shot Will Baker through the shoulder—some witnesses stating that he pursued him eight or ten feet before shooting him, others that he stepped forward only one or two steps before shooting Will Baker. Defendant then turned quickly and fired two shots in rapid succession into the body of deceased, Carson Baker: the first shot being fired while deceased was in a stooping position over the body of Odell Morris, who was still on the ground; and that at the time the second shot was fired deceased staggered back ten or fifteen feet and fell dead. The first shot fired into deceased, struck him in the shoulder and ranged directly downward into the body: the second shot struck him in the eye. Some of the witnesses testified that just about the time defendant fired the shot at Will Baker, that deceased ceased to strike Odell Morris, and began to straighten up: others state that he did not cease to strike Odell Morris, but was still striking him when the first shot was fired at deceased by defendant. All the witnesses agree that at the time the first shot was fired at deceased, he was in a stooping position over the body of Odell Morris, who was lying on the ground; and that when the second shot was fired at deceased, he was still stand-

ing over the body of Odell Morris, but had straightened his head up. After defendant had fired two shots at deceased he turned and was fired upon by Will Baker, who shot him in the thigh, and he immediately fired two shots at Will Baker. A few minutes after the shooting was over a brass or cast knuck was found on the ground where deceased fell. Several persons testified as to the character of wounds inflicted on Odell Morris by Carson Baker, some testifying that the wounds on his face the next day appeared to be scratches or slight wounds. The physician who dressed the wounds testified that there were seven or nine cuts on his face and head, each of which laid the skull bare. Some witnesses stated that the wounds on the face could have been inflicted with the naked fist, but all the witnesses agreed that those in the head under the hair (of which there were five or seven) could not have been inflicted with the naked fist, and must have been inflicted with knucks or some other hard substance. The physician gave Odell Morris a hypodermic of morphine before he dressed the wounds. Deceased had a pistol on when killed.

Appellant's first assignment complains that the State's witness Taylor was permitted to testify about the difficulty which occurred three weeks before the killing, in which Odell Morris beat up deceased; and that during the progress of the fight, appellant said to Odell, "That is no way to fight, why don't you get him by the .throat and beat him until he halloas"; and also defendant said, "Why didn't you beat him until he halloas enough while you had him down." And that defendant made no effort to separate his son and deceased while they were fighting. The objection to this testimony is that it was immaterial, irrelevant and hearsay. Neither of these objections are tenable. The testimony was admissible on the ground of animus on the part of appellant toward deceased.

Appellant complains of the sixth paragraph of the court's charge, which is as follows: "If the jury shall believe from the evidence beyond a reasonable doubt that in Harrison County, Texas, about May 4, 1905, Odell Morris and Carson Baker became engaged in a personal difficulty or combat, and Carson Baker by reason of physical strength or by any other reasons, obtained greatly the advantage of Odell Morris in such difficulty, and the defendant, W. M. Morris, in a sudden transport of passion aroused by adequate cause, as the same is herein explained, or there was engendered by the difficulty and its attendant cimcumstances, in the mind of defendant, such a degree of anger, rage, sudden resentment or terror as to render his mind incapable of cool reflection, and under the immediate influence of such adequate cause or such anger, rage, sudden resentment or terror, he shot with a pistol and killed deceased; or if you believe from the evidence beyond a reasonable doubt that in the difficulty between Odell Morris and Carson Baker, that Carson Baker had withdrawn in good faith from such difficulty, and that defendant knowing that Carson Baker had abandoned all hostile intent against Odell Morris, and did no act from

which defendant could reasonably infer a further intention on Carson Baker's part to renew or prosecute the difficulty, and thereafter under the immediate influence of rage, anger, sudden resentment or terror sufficient to render his mind incapable of cool reflection, the defendant, with a pistol shot and killed deceased; and you further believe from the evidence that such killing was not justifiable homicide, as explained in succeeding instructions, then find defendant guilty of manslaughter," etc. The objection of appellant to said charge being that the assault upon Odell Morris by Carson Baker was the one that inflicted serious bodily injury upon him, yet the jury are instructed to find defendant guilty. The latter clause of the charge quoted shows that this criticism is not correct, since the court tells the jury that the charge given would not be the law if from the evidence such killing was justifiable homicide, as explained in succeeding instructions. Subsequently the court explained to the jury the right of appellant to defend his son to the same extent as he could have defended him, charging upon both real and apparent danger.

Appellant also objects to the charge on the ground that there was no abandonment of the fight by Carson Baker before appellant shot him; and because the evidence shows that the fight between Carson Baker and Odell Morris was continuous and unabated, and there was no legal withdrawal or abandonment of the same. We do so understand the evidence. The facts show appellant's son and Carson Baker engaged in a personal difficulty, and at the time appellant shot at the brother of deceased, Carson Baker arose from the prostrate form of his son, and standing in a half-stooped position appellant shot him. Then he raised up entirely and appellant shot him in the eye. The first shot took effect in the shoulder. These facts do not present the issue of abandonment of the difficulty.

His fourth assignment complains of the eighth paragraph of the charge on the law of self-defense. We do not deem it necessary to quote this charge. Suffice it to say that it is in accord with the approved precedents laid down by this court.

There are various other assignments of error to the charge. We have carefully reviewed all of them, and it is not necessary to discuss them.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*